This is a case about whether the Disability Law Center is going to be allowed to do its job. And that job is to investigate allegations of abuse and neglect against children with disabilities. A job Congress found so important as to grant the Disability Law Center specific statutory authorization to conduct those investigations. From the very beginning of this investigation, the Anchorage School District has thrown up ever-changing roadblocks to prevent us from doing that job. First, the School District refused to provide parent-guardian contact information without more information about the nature of our investigation. However, after supplying both more information and explaining the basis of our probable cause determination, the School District then insisted on the Disability Law Center entering into an investigatory protocol. And finally, when unable to secure a protocol, it now argues that FERPA is an absolute bar to the release of the contact information, although it has previously released that information to us in the past in another investigation. So the latter point is the point that most intrigues me regarding this case. Could you elaborate a little on the interplay between FERPA and the Disability Act? Yes, Your Honor. The Developmental Disabilities Act and FERPA have the same purpose, and that's the protection of students. And the Department of Health and Human Services and the Department of Education's joint amicus brief in the Federal Second Circuit case, Hartford, really analyzed the interplay between those acts and Congress's purpose behind each act, and was able to harmonize them by allowing the P&As, or the Disability Law Center in this case, to have access to parent-guardian contact information. It was able to harmonize the acts because, one, it found the Developmental Disabilities Act as an initial matter, contemplated releasing parent-guardian contact information because the Disability Law Center has to get authorization to access records. And two, it was able to harmonize it with the purposes of FERPA because FERPA leaves the ability to provide the authorization to parents. Counsel, if a parent were unhappy about the provision of this contact information, would that parent have a cause of action under FERPA for release of that information? No, Your Honor. Why not? The Gonzaga case, it's been held that there's no private right of action under FERPA. It would be the Department of Education to enforce any release of information in violation of FERPA. And here, because the Department of Education has said in its joint amicus brief that there's a limited exception here to give protection and advocacy organizations this information, that shows what the Department of Ed may do if there was such a complaint, that they understand that protection and advocacy organizations should get this information. So since they've given us guidance on what they believe FERPA provides in this situation, it's persuasive authority and it's certainly similar to what the Seventh Circuit found in the Disability Rights Wisconsin case. And the primary concern here, and the point not to be overlooked, is that the Developmental Disabilities Act contemplates parent-guardian contact information being released to a protection and advocacy organization. Without that release, basically our ability to conduct an investigation is eviscerated. We can't get the records we need. I'd also like to address that we should get this type of information. What is it you need then to make the school district respond to your request? You say you have the right to request this under the Disabilities Act, DD or whatever it is. Need you also show probable cause to warrant the release of that information? The joint amicus brief says that the release of that information is when we do have probable cause, and we believe we have probable cause here. Well, I guess what I was getting at, you need both. The authorization under the Act, DD, and probable cause to trigger your ability to get the information. We first need to have investigatory authority, and that authority comes from finding a report of an incident or determination that probable cause exists. Did you establish probable cause here? The district court seemed to think not, I think. The district court erred in its determination of probable cause because first it misunderstood the definition of probable cause. It limited probable cause in time to only if abuse and neglect would occur in the future, and it also relied on the teacher no longer being in the school district and the investigation would take place in a subset of what school year. The very definition of probable cause suggests that we would investigate past instances of abuse and neglect. So applying the wrong standard from the very beginning, the district court made a legal error in determining... See if I understand you. You're saying the district court required a showing of a systemic situation, an ongoing situation? Is that what you say? Yes, Your Honor. But all you needed were the past complaints, and that was sufficient to establish the probable cause that your argument is having. Yes, Your Honor, because probable cause is a reasonable belief that abuse and neglect may have occurred, and also taking into account our expertise as a protection and advocacy organization, another point the district court didn't analyze or even take into account. What was the contact information you requested for each student in the class? Is that what you requested? For each, yes, a student in the intensive needs classroom, and it's in the record that that's less than 10 students, very much like in the disability rights Wisconsin case. We're not talking about an unspecified amount of students that can't be found. We're talking about a very limited number of students that are identifiable if only we can get the parent and guardian contact information. And it's very important in this case because we had allegations of physical abuse against unnamed students, but they weren't just any unnamed students. They were unnamed students in this classroom with this teacher. So your request was limited to the students who were actually in that classroom during that particular time period. Yes, Your Honor. Finally, I'd also like to address that we should get this information, regardless of how the district court viewed our probable cause, because we had multiple complaints of abuse and neglect. It seems to me you probably want to answer what they're going to. The reason they said not, is there a problem with confidentiality? No, Your Honor, there is not. And the reason there's not a problem with confidentiality is because, one, parent and guardians, once that information comes to us, gets the final say about whether or not we're going to get access to the records. They'll either provide us authorization or they won't, which is exactly what the Developmental Disabilities Act contemplates. Additionally, the protection advocacy organizations and DLC have a confidentiality requirement. We have to keep our clients and information we receive in an investigation confidential. So there will be no re-release of information. So the privacy concerns really ring hollow when you look at the confidentiality strictures that we are under with the Developmental Disabilities Act, and that we allow parents to have the final say about whether or not we'll get access to the records. Turning to complaints, we just want to point out that we believe that complaints provide the same authority to get the information as a probable cause determination, because it's the same statutory provision. It's the same access authority. There's no differentiation between a reported incident and probable cause. So here, if the court finds, as we believe it should, that FERPA is not a bar to this information, it should also apply when we have complaints, because it's undisputed in this case that we had complaints, multiple complaints of abuse and neglect regardless of the probable cause determination. If the court has no further questions, I'd like to reserve my remaining time for a rebuttal. All right. Thank you, Your Honors. Brad Owens on behalf of the Anchorage School District. I apologize for coming in late. It seems to me that this case can be and should be decided on the same basis that the Evergreen decision was decided. The facts and circumstances are remarkably similar. The manner in which the matter was presented to the court is almost identical, and the kind of analysis that was made by the district court in this case, similar to the analysis made by the district court in the Evergreen case, is also remarkably similar. Now, that case is not, I mean, it's a district court case, so it's not precedent. But you're saying it's persuasive and we should follow the reasoning? I think that that's exactly right, Your Honor. And I think that to the extent that the Ninth Circuit rendered a decision affirming that case, even though it isn't precedent for this case, it is an indication that I think both of the district courts handled the matters in an appropriate manner, applied the appropriate legal analysis, and came to the correct result based upon a preliminary or permanent injunction determination. I think the issue in this court cannot be drawn, as I think DLC has endeavored to do, to expand the analysis that the court needs to make beyond considering whether or not the district court properly applied the injunctive analysis. It was a little bit of a different posture because it was a preliminary injunction. Well, both of the cases involved complaints requesting a preliminary injunction. Both of the cases resolved on the basis of denial of the preliminary injunction, which resulted in essentially a permanent injunction. And so it was a resolution on the merits of the case. They're one of the things that I wanted to note for the court. May I ask you, in the Evergreen case, was there any reference to the amicus brief, the joint amicus brief that's been discussed in this case? The one from the Hartford case? Yes. No, there wasn't any reference to that, as I recall. Do you think that changes the analysis at all? Not a whit. Why not? Not one single bit. For a couple of reasons. One is that, as the amicus from the National School Boards Association pointed out in its brief, the type of analysis or suggestions made by the Department of Education and the Department of Health and Social Services in the amicus brief go far beyond what either the statute or the regulations authorize. It is really an ultra-virus kind of suggestion as to what ought to occur in a situation like this. The statute, any of the statutes authorizing protection and advocacy, none of them say what the amicus brief suggests. None of the regulations go so far as what the amicus brief suggests. In fact, there are a couple of places where I think it shows that the intent of the Department of Education, at any rate, is consistent with our position that the Hartford amicus brief should not apply, that the analysis is incorrect. One of those places is when there was a consideration made during the determination of the FERPA regulations as to whether or not the DD Act authorizes disclosure of these records without the kinds of protections that are provided under FERPA, and the Department of Education said no, that isn't something that's intended. The second thing is actually in the regulations under the Individuals with Disability Education Act, there's a specific reference to the state complaint procedure that's available not only to parents, but to organizations like the Disability Law Center, and it expressly says that information about the state complaint procedure needs to be disclosed not only to parents, but to all organizations, and it expressly includes reference to protection and advocacy agencies. Counsel, I'm looking at the brief that was filed. What portion of the brief are you saying went beyond the statute and the regulations? I don't have a specific reference. I can't give you a specific reference at this point in time, but the part that was highlighted by Disability Law Center and by the amicus of the National Disability Rights Group, they reference the provisions of that brief, and it seems to me that those are the provisions that they rely upon, and there doesn't seem to be any textual basis for the kinds of suggestions made by that amicus brief, either in the statutes or in the regulations. Counsel, how would you define the pivotal issue in this case? I think the pivotal issue in this case is, what is it that occurs when an organization like protection and advocacy agency makes a request for this kind of information, a request for this information based upon a generalized authority, and it comes into conflict with the specific and express protections and requirements under the FERPA statute and the IDEA? I think that where one statute is specific and express and the other is more generalized, the court, under standard and longstanding statutory interpretation canons, needs to apply the specific over the more general. I think that that's point one, and I think the other point is that he The reason I ask you is because that's a long statement of the pivotal issue, isn't it? The pivotal issue, Your Honor, I think is whether or not this case was decided properly under the preliminary injunction standard. And I think that that is the issue that's been raised by the Disability Law Center is, what is the conflict between these two statutes? And I want to address that for just a moment. Well, the reason for the statute is because people with developmental disability problems frequently are not in a position to complain themselves. But the parents of those people may very well know certain information that ought to come to the attention of somebody who's trying to protect their children or their relative who has a problem. And as your opponent has suggested, all they want is a name and their address. They're not going to use the information, and they're not going to do anything without first confirming with the parents. Now, why shouldn't they have it? Because the federal statutes under FERPA expressly require the school districts to not disclose that information unless there is consent by the parents, or alternatively, which existed in this case, and in fact, as a practical matter. How do we know on this record there is no consent because the parents haven't been asked? Well, if there had been consent, certainly that would have been provided. And it wasn't. Well, they didn't know to get the consent. That's the problem. They don't know who to ask to consent. So you see, the consent can't be provided because they don't know who to contact. And what they want to find out is who do we contact. So what they do, and what they did in this case, is they make a demand to the Anchorage School District. We want this contact information. That contact information is expressly something that the school district cannot disclose without consent. Excuse me. Let me just tell you why we have the concern. The school district could be protecting certain people who abused. They have no, there's no doubt that there was some conduct which was questionable. Let's just make it in the, and the question is, was it just the child? Is this the person who they know about? Or could it have possibly applied to others? And that's, they can't get the consent unless they know who to ask for consent. Can they? But there is an alternative. In fact, there are two alternative remedies available to Disability Law Center. One, the one that they did in fact pursue, a legal remedy, to go through the courts to ask the court to determine whether there was probable cause, whether there was the right to receive this information. They pursued that under the Disabilities Act, but they could have pursued it under FERPA. There is an express exception to the disclosure statutes, the prohibition against disclosing this specific type of information, which requires the person requesting it, the Disability Law Center, to go to court and obtain a court order for it. There's nothing that would preclude them from doing so. Why they didn't do so under FERPA is a question, but they did so under the Disabilities Act. The court carefully considered, thoughtfully considered all of the facts, none of which are at issue here, none have been appealed. The court considered all of the facts. It carefully and thoughtfully analyzed the disabilities statutes, the FERPA statutes, and the IDEA statutes. You may go straight to the point of what she said the court heard. The court was talking prospectively. She's concerned with the past. Now, is that a legitimate question before us? I think what has to be considered by the court here is the context in which this dispute arose. It arose under the context of a request for a temporary restraining order and a preliminary injunction that was discussing ongoing concerns. And so the court looked at this, and one of the specific things that the court found, the district court found, was that there was no possibility of any sort of continuing problem. Because the person was gone. Both of them, the teacher and the teacher's assistant. Right. But what they're saying to us, we are concerned with what may have happened in the past. Now, how is that corrected by the absence of the two people? Well, I think it's corrected, Your Honor, in, again, one of two ways. Either the Disability Law Center can go to court and establish under FERPA, they didn't establish it under the Disabilities Act, but under FERPA they can go to court and establish with the court that they should receive this information, and the court can then issue an order. Let's assume you're right that they can. The question before us is, must they? I think that they must because FERPA expressly says that the school district cannot disclose this information to anyone in the absence of either written consent or these express exceptions, one of which is going to court. What's your response to opposing counsel's observation that if you gave the information, the Department of Education would be the only one who would be able to take issue with it and the Department of Education doesn't take issue with it? What's your response? Well, that's a little bit of a legalistic argument in the sense that the people that would be impacted and who would take umbrage at that type of disclosure contrary to FERPA would be the very parents about whom this information was disclosed to the Disability Law Center. But the parents would have the option of saying, I don't want to go any further with this. I don't want to release any information. So how would they take umbrage? You're saying they would take umbrage just with being identified as the parents, but they have no legal right of recourse against the school district. Let's think about this in the real world. The kind of impact that it would have would be those parents potentially coming to the school board and making complaints, making complaints in a public setting, making complaints to the news media or to the papers. I think that we can envision a variety of things that might occur as a result of that. But in the converse, if you don't release it, the parents could make allegations that you're harboring people who are mistreating those with disabilities. So that could cut each way. It could, except for this, Your Honor. The court stands in between on all of those situations. Disability Law Center says we have this absolute right, and essentially that's what I hear them saying. If we have a complaint and if we determine probable cause under either of those circumstances, probable cause isn't something that anybody else gets to rule on. We're the ones that decide that. Under either of those situations, we are entitled to come in and get this information, even though FERPA says the district cannot disclose that information. Well, the probable cause determination is subject to review by the court, isn't it? Well, not according to the arguments made by Disability Law Center. And there are cases that have said that the Disability Protection and Advocacy Agency is the final arbiter of probable cause. That can't be so, I submit, based upon the law that is passed. Well, I don't think that's not the posture of this case. Well, it's the posture of the arguments made in this case by Disability Law Center. The posture is that the district court rightfully said, you aren't the ones that get to decide once and for all whether you have probable cause. The court gets to decide that. And the court made a careful analysis of determining whether or not there was probable cause. And again, the findings made by the court are challenged. The question, I really think- Wasn't that probable cause directed toward ongoing, the likelihood of ongoing contact as opposed to conduct as opposed to past conduct? I think it was as to both. But the court specifically said, in addition, there is no chance that this is going to continue to be a problem because the teacher and teacher's aide are gone. And I think that it resolved any future concerns as to probable cause on that basis. But as to a basis for whether or not there was probable cause to believe at the time, the court found that there was not. And I might point out, actually, at the time that the Disability Law Center actually started this investigation, it was the last day of the school year. The case was filed during the summer when school wasn't in session. So really what the court was looking at, the context in which this arose, there was no possibility that there was any sort of abuse or neglect occurring at any time during the time that the case was at issue. I just want to mention one last thing. Under both IDEA and state law, there is a state complaint procedure that authorizes not just parents but organizations to make claims under the IDEA that there's been some violation of identification, evaluation, placement, or provision of faith. Since these were special education schools, the provision of faith is at issue in this sort of a complaint. That complaint procedure is open to the Disability Law Center expressly and the complaint has to be resolved and decided within 60 days. We understand your argument. Thank you, counsel. Thank you. Rebuttal. Your Honors, I'd like to start with talking about actually the concern of parents maybe being angry about the disclosure of this information. The Disability Rights Wisconsin case put it really well in analyzing the competing interests here. It said basically that our agency's access facilitates protection of individuals with disabilities. It's our role as kind of the watchdog of the system to root out when we have allegations of abuse and neglect to find out if they occurred. The privacy interests that parents may have, particularly since they'll have the last word about whether we're going to get access to the records, are outweighed by our important responsibilities here One, notified them perhaps for the first time that there are allegations of abuse and neglect going on. What the school district fails to tell you here is they had received information, separate complaints than ours, and they didn't notify the parents that there was something wrong with this classroom. They certainly could have. In fact, they abandoned their investigation once the teacher left. Additionally, Mr. Owen seems to talk about this case as if it was still a preliminary injunction, but the district court decided the case on the merits and therefore using the wrong definition of probable cause, particularly looking only to whether future events would occur, it wouldn't matter if we got the information in the summer. We need to find out if it happened, and the statute expressly contemplates us looking to past allegations of abuse and neglect. So, counsel, what remedy would you be seeking if the events happened but the alleged perpetrators were no longer there? What would be the practical benefit of having that information? One, we can find out if abuse and neglect occurred. That's what we're supposed to do. That's our job. Two, we can talk to parents. Parents play an important role, which is talked about in the National Disability Rights Network brief. These are children who are in an intensive needs classroom. They're going to be the ones to observe any possible changes in their child and have valuable information. And three, we get access to the records to conduct a full investigation. All we have right now is probable cause, reasonable belief that it occurred. My question was, to what end? Okay, what would you do with that information? If the perpetrators are already gone, then what would be the benefit of getting the information? We have not just a responsibility to find out if that perpetrator committed the act, but how was it allowed to occur? What kind of oversight is the district giving an individual? Is there an investigatory process when they learn about these things, flawed in and of itself? I mean, it's much larger than just simply one teacher and his actions. It's what can we do to remedy it? What can we do to make sure it doesn't happen again or be allowed to happen again? We had several complaints of physical abuse against unnamed students. How could that have gone undetected? Those are questions we need to answer, and then we share that information with the district and we try to figure out how to prevent it in the future. Do you agree with opposing counsel's characterization of your argument that your agency is the sole arbiter of whether or not there's probable cause? We agree that there's judicial review of probable cause, but that judicial review of probable cause has to keep in mind the definition, and that definition relies on our expertise and our particular role we're required to play. And what didn't occur here, really, is a judicial review of probable cause. There were no – there wasn't an evidentiary hearing. There wasn't a weighing of evidence. The district court simply didn't do those things, so it abused its discretion in any factual findings. We submitted affidavits about our complaints. We submitted evidence. It certainly wasn't discounted, and it certainly wasn't argued that it wasn't valid. So if the district court would have applied the correct definition of probable cause, not focused solely on the future, and taken into account our expertise, I believe there would have been a different result here. At the district court, was your focus on ongoing abuse, or did you characterize your argument as you are here talking about past incidents? We talked about all of it, Your Honor. We're not focused on one or the other. We want to keep students safe, certainly, especially concerned about whether students are going to be in contact with that teacher or that teacher's aide, but we also need to get to the bottom of what's going on. Where in the record did you apprise the court of past incidents as opposed to ongoing incidents? It was in our exhibits to our motion, Your Honor, that we had received complaints of abuse and neglect that had occurred in the classroom against unnamed students. I mean, everything was about everything had occurred. We had allegations of abuse and neglect that had occurred. That's how we started our investigation. What should be the bottom line of our decision, in your view? That, one, the Developmental Disabilities Act contemplates us getting parent-guardian contact information as the way that we can do our job, conduct an investigation, and, two, that FERPA does not provide a bar to us getting this information, either when we have probable cause, as we did here, or a complaint, also as we did here. Counsel, what's your response to opposing counsel's reliance on the Evergreen case? The Evergreen case was cited well before the amicus brief by the Department of Education and the Department of Health and Human Services. And an important difference here is that court, the district court there, said it had no persuasive authority to override the status quo, meaning to give the limited override, as the Department of Education and Department of Health and Human Services have called it in their amicus brief, over FERPA. We have the persuasive authority here. We also have the Seventh Circuit case in Disability Rights, Wisconsin, and the District of Connecticut case in Hartford. Here, the court has plenty of persuasive authority that is certainly due some deference, at the very least, to find that FERPA is not a bar to this release of information. What's your response to opposing counsel's characterization of the brief as ultra-virus, because it went far beyond the statute and the regulations? The school district, it doesn't go beyond the statute and the regulations. In fact, we have the two regulatory agencies charged with enforcement and regulatory action under the two statutes, working together, harmonizing the two, and finding that you could effectuate the purpose of both, as Congress intended, by giving this limited override and weighing the pros and cons and the competing interests. It's certainly well within their authority to provide that guidance. All right. Thank you, counsel. Your time has expired. Thank you to both counsels. The case that's argued is submitted for decision by the court. The next case on calendar for argument is Conix v. Tech, Alaska, Incorporated.
judges: Farris, Thompson, Rawlinson